# Roland *et al.* The State.

### *Indictment for Murder.*

1. *Homicide; relevant evidence; statement of defendants.*—Where on a trial under an indictment for murder, there was evidence tending to show that the defendants were hired to kill the deceased, a negro, that just after they returned from the direction they were told the person who hired them was, they divided a part of the price of their proposed crime, and then declared that there were two negroes they would kill before leaving the county, that they endeavored to find their victim, and failing they left word for their employer in crime that they would return "and do what they said they would do," and that about the time they did return as promised, the deceased was killed from ambush, evidence that while drinking, just after they divided the money they had received, they would look at one another. and say "Come to me, Mr. Nigger" is admissible; such statement by them being a circumstance for the consideration of the jury in connection with the other evidence.

APPEAL from the Circuit Court of Dale.

Tried before the Hon. JOHN R. TYSON.

The appellants, Joe Roland and John Folks, were indicted and tried for the murder of one John Mitchell, and were convicted of murder in the first degree, and sentenced to the penitentiary for life. On the trial of the cause, there was evidence introduced tending to show that the defendants had shot the deceased from

ambush and killed him. The only question which is considered on this appeal, is sufficiently shown in the opinion, and a fuller statement of facts pertaining thereto is unnecessary.

LEE & LEE, for appellants.

W. C. FITTS, Attorney-General, for the State. The testimony which was objected to by the defendant, when taken in connection with the other evidence in the case, was relevant, and was properly admitted.—*Harrison v. The State*, 79 Ala. 29.

McCLELLAN, J.—There was evidence which tended to show that Stokes hired the defendants to kill the negro Mitchell, and paid them twenty dollars to that end. It also appeared that two weeks before the murder the defendants were in Ariosto and inquired of the witness Day whether he knew where Stokes was, and he having informed them of Stokes' whereabouts, they left him going in the direction given them to find Stokes. In about an hour they returned to the witness's bar-room, and asked him to change a ten dollar bill which one of them had. He gave them ten silver dollars in change, and these they divided equally, each putting five dollars in his pocket. The defendants drank a good deal that evening at the witness's bar, and one of them said, ''there were two damned negroes they were going to kill before they left the county,'' (they lived in Florida), and while drinking they ''would look at one another and say : 'Come to me, Mr. Nigger.' '' To this evidence—Come to me, Mr. Nigger—there was objection. It was in our opinion properly overruled. The expression which they thus bandied from one to the other may have been, doubtless was, in itself, a circumstance of little or no probative force, but when taken with the evidence which tended to show that Stokes had just previously hired the defendants to kill the negro, Mitchell, that on this very occasion they had divided between them a part of the price of their proposed crime, and then declared there were two negroes they would kill before they left the county, and with the further evidence that they endeavored to find and kill Mitchell on the night of that day, and failing at that time to

accomplish their purpose left the neighborhood sending a message to Stokes that they would return in two weeks "and do what they said they would do," and finally that they did return to the neighborhood in about two weeks, when Mitchell was killed from ambush, it is clear we think that it—the expression, "Come to me, Mr. Nigger"—was a circumstance for the consideration of the jury, and hence was properly admitted.

The remaining exceptions reserved on the trial are so obviously without merit that we deem it unnecessary to discuss them.

Affirmed.