(82 South. 576)

REIMS v. STATE.   (6 Div. 598.)

(Court of Appeals of Alabama.   June 17, 1919.)

1. CONSTITUTIONAL LAW ☞62—DELEGATION OF POWER TO STATE LIVE STOCK SANITARY BOARD—CRIMINAL PROSECUTIONS.

Legislature may confer authority on state live stock sanitary board to make rules and regulations, the violation of which will support prosecutions when the statute denounces the act as a crime.

2. ANIMALS ☞29 — LIVE STOCK SANITARY BOARD — REGULATIONS — CONFORMITY TO STATUTE.

Rules and regulations of state live stock sanitary board, to be effectual, must conform strictly to the statutes authorizing their enactment.

3. ANIMALS ☞29—STATE LIVE STOCK SANITARY BOARD — REGULATIONS — VALIDITY — TICKS.

State live stock sanitary board regulation No. 8, requiring persons having cattle infected with, or exposed to the infection of, ticks, to dip animals, after notice, in arsenical solution as long as the ticks remain on the cattle or the premises remain infested, regardless of whether cattle or places are quarantined by state veterinarian under Code 1907, § 760, held void for nonconformity to sections 758 and 763, pursuant to which it was passed; the board, under such statutes, having the power merely to make rules and regulations affecting "quarantined live stock" or "quarantined places."

4. ANIMALS ☞36—VIOLATION OF TICK LAW—SUFFICIENCY OF AFFIDAVIT.

In prosecution for violation of state live stock sanitary board regulation No. 8, requiring persons owning or having in charge any cattle infected with ticks to dip cattle in arsenical solution, affidavit charging that defendant failed to dip or disinfect cattle in violation of the rules and regulations of state live stock sanitary board, without alleging that defendant was the owner, renter, or party in possession of the quarantined live stock or quarantined place, as required by Code 1907, § 763, held demurrable.

5. INDICTMENT AND INFORMATION ☞55 — LAXNESS IN PLEADING.

Laxness in pleading is not permissible in charging commission of crime.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Henry Reims was convicted of violating the tick law, and he appeals. Reversed and remanded.

<hr>

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] 16 Ala. App. 367.

Huey & Welch, of Bessemer, for appellant. J. Q. Smith, Atty. Gen., and Horace Wilkinson, Asst. Atty. Gen., for the State.

BRICKEN, J. The defendant was tried and convicted of the offense of violating what is known and commonly called the tick law. He was tried' upon an affidavit and warrant sworn out before the judge of the inferior court of Bessemer, and made returnable to the Bessemer division of the circuit court; from a judgment of conviction in said circuit court this appeal is taken.

It appears from the record that in July, 1917, the defendant's cattle were put under quarantine because they were infected with the tick, and the quarantine is still in force and effect. He was served with written notice by the proper agents of the live stock board. to dip his cattle on the 1st day of April, 1918, and every 15 days thereafter, which he failed to do; he did erect a dipping vat on his place, and procured some dipping solution, and has made attempts at times to dip some of his cattle, but it is not contended that he dipped even substantially all of his cattle during the period covered by this prosecution, which was instituted on June 14, 1918. The case was tried before a jury, who returned a verdict finding the defendant guilty as charged and assessed a fine of $1 against him.

The question in this case turns upon the validity of regulation numbered 8 of the state live stock sanitary board, which regulation is as follows:

"No person owning or having in charge any cattle, horses, mules, or asses infected with or exposed to the infection of ticks, Margaropus Annulatus (Boophilus Annulatus), shall fail to dip all such animals (after being notified. to do so by an officer or inspector commissioned by the live stock sanitary board), in a standard arsenical solution contained in a dipping vat, every two weeks, at the time and place designated by said officer or inspector, as long as the ticks remain on the cattle or the premises or pasture remain infested or the premises remain quarantined, unless the owner or person in charge receives permission from an inspector commissioned by said board to disinfect animals in any other manner. When quarantined animals and premises are free of ticks, an order releasing them from quarantine will be issued by an agent or inspector commissioned by said board."

The state live stock sanitary board, under section 758 of the Code of 1907, is given power to make or enact such rules and regulations as they may deem necessary for governing the movement, transportation, or disposition of live stock that may be quarantined under the quarantine laws of the state, and section 760 of the Code gives to the state veterinarian the authority to quarantine any part or place in the state when he shall determine the fact that live stock in such place or places are affected with a contagious, infectious, or communicable disease, or when said live stock are infested or infected with the carriers of such diseases. Section 763 of the Code provides that—

"Owners, renters, or parties in possession of quarantined live stock or quarantined places shall follow the directions in the rules and regulations of the state live stock sanitary board in cleaning and disinfecting infected live stock and infested or infected quarantined places, and in destroying the carriers of the cause of a contagious, infectious, or communicable disease, that infest, or infect, live stock and quarantined places."

It will be observed that the statute confers power upon the board to make rules or regulations affecting "quarantined live stock," or "quarantined places." Regulation 8 of the state live stock sanitary board, made the basis of this prosecution, undertakes to go further and require persons owning or having in charge any cattle infected with, or exposed to the infection of, ticks to dip all such animals after notice in a standard arsenical solution contained in a dipping vat every two weeks, at the time and place designated by said officer or inspector, as long as the ticks remain on the cattle, "or" the premises or pasture remain infested, regardless of whether such cattle or places are or are not quarantined.

As was said in Curlee v. State, 16 Ala. App. 62, 75 South. 268:

"There is nothing in the statute that requires persons owning or having possession of cattle infected with or exposed to ticks to dip such cattle in 'a standard arsenical solution,' 'after having been notified to do so.' "

[1-3] That the Legislature may confer, and has conferred, authority on the state live stock sanitary board to make rules and regulations, the violations of which will support prosecutions when the statute denounces the act as a crime, is settled beyond question. Curlee v. State, supra; Floyd v. State, 15 Ala. App. 654, 74 South. 752; Whaley v. State, 168 Ala. 152, 52 South. 941, 30 L. R. A. (N. S.) 499. But all such rules and regulations, in order to be effectual, must conform strictly to the statutes authorizing their enactment. Regulation numbered 8 does not do so, and therefore must be held to be void.

[4, 5] The affidavit upon which the defendant was tried was also subject to demurrer for another reason. In order to render the defendant liable for a violation of a rule enacted by the state live stock sanitary board, he must be brought strictly within its terms. This the state seeks to do by charging that the defendant failed or refused, without just cause or legal excuse, to dip or disinfect cattle in violation of the rules and regulations of the state live stock sanitary board duly adopted, etc. The affidavit does not allege that the defendant was the owner, renter, or party in possession of quarantined

17 ALA.APP.—9

live stock, or of the quarantined place, as required by section 763 of the Code of 1907. Error similar to this has been held to be without injury under rule 45 (61 South. ix[1]) in civil cases, where all of the evidence was admitted as if the regulation had been made, and the charge of the court treated it as a part of the issue made up. Best Park & Amusement Co. v. Rollins, 192 Ala. 534.[2] But such laxness in pleading is never permissible in charging the commission of a crime. The foregoing being a determination of the case, it becomes unnecessary to pass upon other matters presented by the record.

For the error pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.

[1] 175 Ala. xxi.   [2] 68 South. 417, Ann. Cas. 1917D, 929.